# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| SLYDE ANALYTICS LLC, | Case No. 2:26-cv- 00415 |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| v. | |
| XIAOMI  CORPORATION,  XIAOMI  H.K. LTD., XIAOMI COMMUNICATIONS CO., LTD., and XIAOMI, INC., | |
| Defendants. | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Slyde Analytics LLC ("Slyde" or "Plaintiff") for its Complaint against Defendants

Xiaomi Corporation ("Xiaomi Corp."), Xiaomi H.K. Ltd. ("Xiaomi H.K."), Xiaomi

Communications Co., Ltd. ("Xiaomi Communications"), and Xiaomi, Inc. ("Xiaomi, Inc.")

(collectively, "Xiaomi" or "Defendants") for patent infringement alleges as follows:

## THE PARTIES

1.      Slyde is a limited liability company, organized and existing under the laws of the

State of Texas, with its principal place of business located at 104 East Houston Street, Suite 170,

Marshall, Texas 75670. Slyde is the owner and licensor of established intellectual property in the

smart watch and fitness tracking space. Slyde is the sole U.S. distributor for Myotest SA's fitness

tracking software, which is covered by its patents and captures, analyzes, and improves

biomechanical metrics on smart watches and other devices. Further, Slyde marketed the Myotest

SA fitness tracking software and reached out to several companies throughout Texas, including

within this District. In furtherance of its licensing efforts in Texas, Slyde has developed

demonstration applications with the Myotest SA fitness tracking software.

2.      On information and belief, Defendant Xiaomi Corp. is a corporation organized and existing under the laws of the Cayman Islands, with a place of business at Maples Corporate Services Limited, P.O. Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands. On information and belief, Xiaomi Corp. may be served pursuant to the provisions of the Hague Convention. On information and belief, Xiaomi Corp. does business in Texas and in the Eastern District of Texas, directly or through its subsidiaries.

3.      On information and belief, Defendant Xiaomi Communications is a corporation organized and existing under the laws of the People's Republic of China, with its principal place of business at Xiaomi Office Building, 68 Qinghe Middle Street, Haidian District, Beijing, China 100085. On information and belief, Xiaomi Communications may be served pursuant to the provisions of the Hague Convention. On information and belief, Xiaomi Communications does business in Texas and in the Eastern District of Texas, directly or through its subsidiaries.

4.      On information and belief, Xiaomi H.K. is a corporation organized and existing under the laws of Hong Kong, with its principal place of business at Unit 806, Tower 2 8/F, Cheung Sha Wan Plaza, 833 Cheung Sha Wan Road, Kowloon City, Hong Kong SAR, China.  On information and belief, Xiaomi H.K. may be served pursuant to the provisions of the Hague Convention. On information and belief, Xiaomi H.K. does business in Texas and in the Eastern District of Texas, directly or through its subsidiaries.

5.      On information and belief, Xiaomi, Inc. is a corporation organized under the laws of People's Republic of China, with its principal place of business at Xiaomi Office Building, 68 Qinghe Middle Street, Haidian District, Beijing, China 100085. On information and belief, Xiaomi, Inc. may be served pursuant to the provisions of the Hague Convention.  On information

2

and belief, Xiaomi, Inc. does business in Texas and in the Eastern District of Texas, directly or through its subsidiaries.

6.     Defendants have authorized sellers, such as Best Buy and Walmart, and sales representatives that offer and sell products pertinent to this Complaint throughout the State of Texas, including in this Judicial District, and to consumers throughout this Judicial District, with such sellers maintaining stores at: Best Buy, 422 West TX-281 Loop, Suite 100, Longview, Texas 75605; and Walmart, 1701 East End Boulevard North, Marshall, Texas 75670; 515 East Loop 281, Longview, Texas 75605; and 4006 Estes Parkway, Longview, Texas 75603.

7.     Defendants design, manufacture, make, use, sell, and/or import into the United States watches with electronic display and fitness tracking capabilities. Defendants' watches and fitness tracking devices are marketed, used, offered for sale, and/or sold throughout the United States, including within this District.

## JURISDICTION

8.     This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq*. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, 1338 and 1367.

9.     This Court has personal jurisdiction over Defendants consistent with the requirements of the Due Process Clause of the United States Constitution and the Texas Long Arm Statute. On information and belief, Defendants have sufficient minimum contacts with the forum because Defendants transact substantial business in the State of Texas and in this Judicial District. Further, Defendants have, directly or through subsidiaries or intermediaries, committed and continue to commit acts of patent infringement in the State of Texas and in this Judicial District as alleged in this Complaint and more particularly below. Furthermore, Defendants have purposefully

availed themselves of the privileges of conducting business in the State of Texas and in this District; Defendants have sought protection and benefit from the laws of the State of Texas; and Plaintiff's causes of action arise directly from Defendants' business contacts and other activities in the State of Texas and in this District.

10.     Defendants are subject to this Court's specific and general personal jurisdiction due at least to their substantial business in this forum, including (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in Texas and in this district.

11.     Specifically, Defendants intend to do and do business in, and have committed acts of infringement in this District, in the State of Texas, and in the United States, directly, through intermediaries, and offer and send their products or services, including those accused of infringement here, to customers and potential customers located in this State, including in this District, and in the United States.

12.     On information and belief, Defendants also make their products available for sale in this District at least through third-party sellers, such as Walmart and Amazon.[1]

13.     Defendants have committed acts of infringement in this District, including, but not limited to, making, using, selling, offering for sale, and importing the Accused Products.

14.     Defendants have purposefully directed infringing activities to residents of the State of Texas, and this litigation results from those infringing activities. Defendants regularly sell (either directly or indirectly), their products within this District. For example, Defendants have placed infringing products into the stream of commerce via established distribution channels with

---

[1] *See, e.g.,* https://www.walmart.com/browse/0?facet=brand:Xiaomi

the knowledge or understanding that such products are being sold in this Judicial District and the State of Texas. For example, Defendants make their products available in stores, as discussed above (*see* ¶ 12), either directly or indirectly, as well as on the internet through online storefronts, such as Amazon.com. Listings for Defendants' products on Amazon.com link directly to Defendants' official Amazon storefront.[2]

15.    Defendants have also been named as respondents in investigations before the International Trade Commission for violations of section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. 1337, demonstrating Defendants' knowing importation of goods into the United States.[3]

16.    By way of further example, in the past, Defendants have not formally contested jurisdiction and venue in this Court. *See, e.g., Rsch. Found. for The State Univ. of New York, v. Xiaomi Corp.*, Case No. 2:23-cv-00353-RWS-RSP, Dkt. 16 (E.D. Tex. Feb. 1, 2024).

17.    Defendants are subject to this Court's specific and/or general jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due to their substantial and pervasive business in this State and Judicial District, including their infringing activities alleged herein, from which Defendants have derived substantial revenue from goods sold to Texas residents and consumers.

---

[2] *See, e.g.,* https://www.amazon.com/Xiaomi-Smart-Band-Global-Version/dp/B0CD2MP728/ref=sr_1_1?crid=KSL2ZVFSR6XR&dib=eyJ2IjoiMSJ9.3s2i7FhF5WaQP3LLqGjT-OJ-n7MV35k_N0uir08uTJy_vskaFA6te5Y1zu9FqvBKKh3PUf_qRP2ynDpuEw58myM5yLVrj3HxSexH3IaAeDG1g2SN76SfUHtAY26XfsDF0pgnC2xR8Xp1_Ba1qj5Dsmg-f-VESJnL5-BD67NVEMlYDtgzxQ5Cf8N2gYbFbiGTKKAn2FxXYnQkj7IsV9D0KWbXKzW6joj2YXgrKZ9v9kA.w4xC_vS9iE8wJmb7Uzg10zhjfKG3ix17mrK7NPaaPBA&dib_tag=se&keywords=xiaomi+smart+band+8&qid=1773243358&sprefix=Xiaomi+Smart+Band+8%2Caps%2C118&sr=8-1

[3] https://public-inspection.federalregister.gov/2023-14840.pdf?1689165922

18.    Venue is proper against Defendants in this District pursuant to 28 U.S.C. § 1391 because, among other things, Defendants are not residents of the United States and thus may be sued in any judicial district pursuant to 28 U.S.C. § 1391(c)(3). *See also In re HTC Corp.*, 889 F.3d 1349, 1357 (Fed. Cir. 2018) ("The Court's recent decision in *TC Heartland* does not alter" the alien-venue rule).

## **PATENTS-IN-SUIT**

19.    On October 31, 2017, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 9,804,678 (the "'678 Patent") entitled "Method and Circuit for Switching a Wristwatch from a First Power Mode to a Second Power Mode". A true and correct copy      of      the      '678      Patent      is      available      at: https://patentimages.storage.googleapis.com/66/75/da/3c1794bd793023/US9804678.pdf.

20.    On February 5, 2019, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 10,198,085 (the "'085 Patent") entitled "Method and Circuit for Switching a Wristwatch from a First Power Mode to a Second Power Mode". A true and correct copy      of      the      '085      Patent      is      available      at: https://patentimages.storage.googleapis.com/2f/74/71/1b183d01f4d6c0/US10198085.pdf.

21.    On May 16, 2017, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 9,651,922 (the "'922 Patent") entitled "Wristwatch with a Touch Screen and Method for Displaying on a Touch-Screen Watch". A true and correct copy of the '922 Patent is                               available                               at: https://patentimages.storage.googleapis.com/46/41/aa/e6cf42c43ea6fd/US9651922.pdf.

22.    On January 23, 2018, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 9,873,018 (the "'018 Patent") entitled "Integrated Portable Device

and Method Implementing an Accelerometer for Analyzing Biomechanical Parameters of a Stride". A true and correct copy of the '018 Patent is available at: https://patentimages.storage.googleapis.com/8e/51/b7/79c6a81c80a7e0/US9873018.pdf.

23. On January 3, 2017, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 9,536,134 (the "'134 Patent") entitled "Athletic Performance Monitoring Device". A true and correct copy of the '134 Patent is available at: https://patentimages.storage.googleapis.com/ae/cb/1e/a8c70047a23863/US9536134.pdf.

24. Slyde is the sole and exclusive owner of all right, title, and interest in the '678 Patent, the '085 Patent, the '922 Patent, the '018 Patent, and the '134 Patent, (collectively, the "Patents-in-Suit"), and holds the exclusive right to take all actions necessary to enforce its rights to the Patents-in-Suit, including the filing of this patent infringement lawsuit. Slyde also has the right to recover all damages for past, present, and future infringement of the Patents-in-Suit and to seek injunctive relief as appropriate under the law.

**FACTUAL ALLEGATIONS**

25. The Patents-in-Suit generally relate to methods and apparatuses related to wristwatches with a digital display, wearables, and smartphones.

26. The '922 Patent generally relates to technology involving a wristwatch with a digital matrix display, a sheet of touch-sensitive glass, and a processing circuit for interpreting signals from the touch-sensitive glass in order to make changes to what is displayed on the digital matrix display. The technology described in the '922 Patent was developed by famed watch designers Pascal Pozzo Di Borgo and Jörg Hysek[4]. For example, the technology accused herein is

---

[4] Jörg Hysek is a prominent figure in the international watchmaking community, both for high-end fitness watches and high-end mechanical watches. *See, e.g.,* https://www.thenakedwatchmaker.com/people-jorg-hysek;

implemented by infringing smartwatches with an electronic display allowing for the display of scrolling and replaceable face cards, including, but not limited to, Xiaomi Mi Watch Lite, Redmi Watch, Mi Watch Lite, Redmi Watch 2 Lite, Redmi Watch 3, Redmi Watch 3 Active, Redmi Watch 4, Redmi Watch 5, Redmi Watch 5 Lite, Redmi Watch 5 Active, Xiaomi Watch S1, Xiaomi Watch S1 Active, Xiaomi Watch S1 Pro, Xiaomi Watch S3, Xiaomi Mi Smart Band 4, Xiaomi Mi Smart Band 5, Xiaomi Mi Smart Band 6, Xiaomi Smart Band 7, Xiaomi Smart Band 7 Pro, Xiaomi Smart Band 8, and Xiaomi Smart Band 9, alone or in combination with certain applications (collectively, the "Accused Products"), among other products.

27.     The '678 Patent and '085 Patent generally relate to technology involving a wristwatch with a display which can operate in a plurality of power modes, wherein the wristwatch switches from a first power mode to a second power mode upon the detection of a gesture, tap, or wristturn through the use of an accelerometer and/or other sensors. The technology described in the '678 Patent and '085 Patent was developed by Alex Bezinge, Adrian Mohni, Daniel Pfeifer, and Musa Dogan. For example, the technology is implemented by infringing smartwatches with a digital display and associated software including, but not limited to, the Accused Products, among other products.

28.     The '018 Patent generally relates to technology involving a device for analyzing the biomechanical parameters of the stride of a runner. The technology described in the '018 Patent was developed by Patrick Flaction, Jacques Quievre, and Jean-Benoit Morin. For example, the

---

https://www.crownandcaliber.com/posts/jorg-hysek-watch-designs/;
https://www.everestbands.com/blogs/bezel-barrel/watch-designer-spotlight-jorg-hysek?srsltid=AfmBOortAsZWizRfibp2FIEgYixO9y0LLi792X1IBwCud7tQN6jZLZ0o.    Jörg Hysek's designs include the original Vacheron Constantion 222, which served as the precursor to the Vacheron Constantin Overseas, one of the most iconic sports watches in the world from one of the oldest, if not the oldest, watch brands still in operation. *See* https://www.crownandcaliber.com/posts/jorg-hysek-watch-designs/

technology is implemented by infringing devices with a power source, accelerometer, chronograph, and digital processor for measuring parameters associated with a runner's stride including, but not limited to, the Accused Products, among other products.

29. The '134 Patent generally relates to technology involving an athletic performance monitoring device with an accelerometer wirelessly connected to a user-worn device with a processing system to provide athletic performance information. The technology described in the '134 Patent was developed by Patrick Flaction. For example, the technology is implemented by infringing smartwatches with a digital display and wearables including, but not limited to, the Accused Products, among other products.

30. Defendants have infringed and are continuing to infringe the Patents-in-Suit by making, using, selling, offering to sell, and/or importing, and by actively inducing others to make, use, sell, offer to sell, and/or importing, products including, but not limited to, smart watches with electronic displays and associated software. Defendants' direct infringement further includes practicing all the steps of the Patents-in-Suit by, for example, conducting internal testing, quality assurance, research and development, troubleshooting, demonstration, and other use of the Accused Products in the U.S. *See, e.g.*, *Waymark Corp. v. Porta Sys. Corp.*, 245 F.3d 1364, 1366 (Fed. Cir. 2001) (noting that "testing is a use of the invention that may infringe under § 271(a)"); *see also Longhorn Auto. Grp., LLC v. Mitsubishi Motors Corp.*, No. 2:24-CV-00685-JRG, 2025 WL 3706950, at *2 (E.D. Tex. Dec. 22, 2025) (holding that allegations of direct infringement through "promotional demonstration, testing, repairs, troubleshooting, and instructional guidance" are sufficient at the pleading stage).

31. Defendants have specifically induced infringement and continue to induce infringement of the Patents-in-Suit by advertising on their website and making available on their

website, and at other locations, instructional materials on how to operate the Accused Products in an infringing manner.[5] *See Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315, 1335 (Fed. Cir. 2016) ("[W]e have affirmed induced infringement verdicts based on circumstantial evidence of inducement [e.g., advertisements, user manuals] directed to a class of direct infringers [e.g., customers, end users] without requiring hard proof that any individual third-party direct infringer was actually persuaded to infringe by that material."). Defendants took active steps to induce infringement through the advertisement of their products and distribution of instructional materials. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 932 (2005) ("[I]t may be presumed from distribution of an article in commerce that the distributor intended the article to be used to infringe another's patent, and so may justly be held liable for that infringement").

## COUNT I
### (Infringement of the '678 Patent)

32.     Paragraphs 1 through 31 are incorporated by reference as if fully set forth herein.

33.     Slyde has not licensed or otherwise authorized Defendants to make, use, offer for sale, sell, or import any products that embody the inventions of the '678 Patent.

34.     Defendants have and continue to directly infringe the '678 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '678 Patent. Such products include smartwatches with gesture detection for switching power modes including, but not limited to, the Xiaomi Smart Band 8, among other products.

---

[5] *See, e.g.,* https://www.mi.com/global/product-list/watches/watch/; https://www.mi.com/global/support/user-guide/

35.     For example, Defendants have and continue to directly infringe at least Claim 1 of the '678 Patent by making, using, offering to sell, selling, and/or importing into the United States products that include smartwatches with gesture detection for switching power modes, such as the Xiaomi Smart Band 8, among other products. The Xiaomi Smart Band 8 is exemplary of how the Accused Products infringe the '678 Patent.

36.     The Xiaomi Smart Band 8 performs a method combining gesture detection by an inertial sensor and gesture detection with a touch panel for switching a wristwatch from a first power mode to a second power mode, wherein the inertial sensor comprises an accelerometer and a processor and/or other processing means, and wherein the wristwatch comprises a microcontroller controlling a display of indication on a digital matrix display of the wristwatch and a touch controller for interpreting touch signal provided by a touch panel underneath a cover glass and for converting said signals into command signal. For example, the Xiaomi Smart Band 8 detects gestures (e.g., a tap or rotation of the screen) through the use of the inertial sensor (e.g., one or more accelerometers and/or gyroscopes and associated processing elements). When the wearer performs a gesture (e.g., a tap or rotation of the screen), the Xiaomi Smart Band 8 switches from a first power mode (e.g., screen and/or processor off or screen dim or one or more power modes of one or more processing elements) to a second power mode (e.g., screen display on or bright). The Xiaomi Smart Band 8 comprises an accelerometer and a processor (e.g., accelerometer and/or gyroscopes and one or more processors, such as the A4 Blue Lite processor).[6] The Xiaomi Smart Band 8 also includes a display and a touch controller provided by a touch panel (e.g.,

---

[6] *See* https://www.auchan.pt/on/demandware.static/-/Library-Sites-AuchanPTSharedLibrary/default/dwd8fa3fed/documents/003670924_4d183adf-5169-4862-8b6e-bb2ebc2d208d.pdf; https://www.mi.com/global/support/faq/details/KA-165246/; https://www.mi.com/global/support/article/KA-109692/

AMOLED touch display) underneath a cover of glass (e.g., 2.5D reinforced glass case). The Xiaomi Smart Band 8 further comprises a microcontroller (e.g., one or more accelerometers and/or gyroscopes and/or one or more processing cores).[7]

37.    The Xiaomi Smart Band 8 performs a step of using the accelerometer of the inertial sensor for generating an acceleration signal used for detecting a gesture on the cover glass of said wristwatch, while the microcontroller and the touch controller are in a sleep power mode. For example, the Xiaomi Smart Band 8 uses the accelerometer to generate an acceleration signal to detect a gesture (e.g., a movement or rotation of the wrist). When the wearer rotates the Xiaomi Smart Band 8, it transitions from a first power mode or sleep mode (e.g., screen off or dim) to a second power mode (e.g., screen on mode or bright mode).[8]

38.    The Xiaomi Smart Band 8 performs a step of using the processor and/or other processing means of the inertial sensor for discriminating between gesture and no gesture based on a direction of said acceleration signal and on a slope or frequency of said acceleration signal as measured by said accelerometer being a three dimensional accelerometer, in response to a detection of a gesture by said inertial sensor waking up the touch controller. For example, the Xiaomi Smart Band 8 watch uses a processor (e.g., A4 Blue Lite processor) working with an inertial sensor (e.g., accelerometer and/or gyroscope) to discriminate between a gesture (e.g., tap, wrist movement, or turn) and no gesture (e.g., no tap, no turn, or wrist movement) based on the

---

[7] *See* https://www.mi.com/global/support/faq/details/KA-243060/#
[8] *See* https://www.auchan.pt/on/demandware.static/-/Library-Sites-AuchanPTSharedLibrary/default/dwd8fa3fed/documents/003670924_4d183adf-5169-4862-8b6e-bb2ebc2d208d.pdf; https://www.mi.com/global/support/article/KA-109692/; https://www.engineersgarage.com/fitness-tracker-sensors/; https://lumenci.com/blogs/accelerometers-a-type-of-micro-electro-mechanical-system-mems/; https://www.analog.com/media/en/news-marketing-collateral/product-highlight/portable_home_healthcare_brochure.pdf at pg. 3.

direction of the acceleration signal. The acceleration signal is measured in three dimensions (e.g., along the x, y, and z axes) using the accelerometer. By way of further example, the Xiaomi Smart Band 8's accelerometer detects a gesture (e.g., a tap, wrist movement, or turn) to wake up the touch controller display.[9]

39.     The Xiaomi Smart Band 8 performs a step of using the touch controller for detecting a tap gesture on the cover glass with the touch panel. For example, the Xiaomi Smart Band 8's touch controller detects a tap gesture (e.g., a user touching the touchscreen).[10]

40.     The Xiaomi Smart Band 8 performs a step of waking up the microcontroller in said wristwatch upon detection of a tap gesture by said touch controller. For example, when the Xiaomi Smart Band 8's touch controller detects a tap gesture, the microcontroller (e.g., at least a portion of the A4 Blue Lite processor and/or other chipset/processing cores) wakes up either by activating one or more processing cores or changing a power mode or processing speed of one or more processing cores.[11]

41.     The Xiaomi Smart Band 8 performs a step of using said microcontroller for

---

[9] *See* https://www.mi.com/global/support/faq/details/KA-243060/#;
https://www.auchan.pt/on/demandware.static/-/Library-Sites-
AuchanPTSharedLibrary/default/dwd8fa3fed/documents/003670924_4d183adf-5169-4862-
8b6e-bb2ebc2d208d.pdf; https://www.mi.com/global/support/article/KA-109692/;
http://www.accelerometry.eu/how-do-3d-accelerometer-sensors-work-and-in-what-scientific-
areas-are-they-used-for-physical-activity/;
https://www.epsondevice.com/sensing/en/tech/column/accelerometer/
[10] *See* https://weareconker.com/blog/capacitive-vs-resistive-touchscreens/;
https://www.mi.com/global/support/article/KA-109692/;
https://www.auchan.pt/on/demandware.static/-/Library-Sites-
AuchanPTSharedLibrary/default/dwd8fa3fed/documents/003670924_4d183adf-5169-4862-
8b6e-bb2ebc2d208d.pdf
[11] *See* https://www.mi.com/global/support/faq/details/KA-243060/#;
https://www.mi.com/global/support/faq/details/KA-165246/;
https://www.analog.com/media/en/news-marketing-collateral/product-
highlight/portable_home_healthcare_brochure.pdf at pg. 3

detecting said gesture and for discriminating between gesture and no gesture based at least on signals from the touch panel. For example, the Xiaomi Smart Band 8's microcontroller (e.g., at least a portion of the A4 Blue Lite processor and/or other chipset/processing cores) detects gestures (e.g., a screen tap or turn), as well as determining whether there was a gesture or whether there was no gesture (e.g., an inadvertent screen tap or inadvertent screen turn) based at least, in part, on signals from the touch panel.[12]

42.     On information and belief, Defendants have directly infringed and continue to directly infringe at least the method claims of the '678 Patent by, among other things, their use, testing, and demonstration of the Accused Products in the United States, such as, for example, demonstrating the Accused Products at trade shows, such as CES 2025 in Las Vegas, Nevada, where the Defendants' direct employees use the Accused Products.[13]

43.     Defendants have and continue to indirectly infringe one or more claims of the '678 Patent by knowingly and intentionally inducing others, including Xiaomi's customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States products that include infringing technology, such as smartwatches with gesture detection for switching power modes.

44.     Defendants, with knowledge that these products, or the use thereof, infringe the '678 Patent at least as of the date of this Complaint,[14] knowingly and intentionally induced, and

---

[12] *See* https://www.auchan.pt/on/demandware.static/-/Library-Sites-AuchanPTSharedLibrary/default/dwd8fa3fed/documents/003670924_4d183adf-5169-4862-8b6e-bb2ebc2d208d.pdf; https://www.mi.com/global/support/faq/details/KA-243060/#

[13] *See* https://gadgetsandwearables.com/2025/01/10/ces-2025-redmi/ ("Xiaomi has kicked off 2025 in style with its CES debut of its latest timepiece – the Redmi Watch 5, along with the Buds 6 series.").

[14] On information and belief, Defendants gained knowledge of the Patents-in-Suit upon the filing of complaints asserting infringement of the Patents-in-Suit against their largest competitors in the United States and Global markets, including in *Slyde Analytics LLC v. Samsung Elecs. Co.,*, Case

continue to knowingly and intentionally induce, direct infringement of the '678 Patent by providing these products to end-users for use in an infringing manner. Alternatively, on information and belief, Defendants have adopted a policy of not reviewing the patents of others, and instructing their officers, agents, and employees to not review the patents of others, including specifically those related to Defendants' specific industry, thereby remaining willfully blind to the '678 Patent at least as early as the issuance of the '678 Patent.

45.     Defendants have induced infringement by others, including end-users, with the specific intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end-users, infringe the '678 Patent, but while remaining willfully blind to the infringement. Defendants have and continue to induce infringement by their customers and end-users by supplying them with instructions on how to operate the infringing technology in an infringing manner, while also making publicly available information on the infringing technology via Defendants' website, product literature and packaging, and other

---

No. 2:23-cv-00083-RWS (E.D. Tex.) (filed on Feb 28, 2023); *Slyde Analytics LLC v. Zepp Health Corp.*, Case No. 2:23-cv-00172-RWS (E.D. Tex) (filed April 14, 2023); *Slyde Analytics LLC v. Garmin Ltd.*, Case No. 2:23-cv-00215-RWS (E.D. Tex.) (filed March 27, 2024); *Slyde Analytics LLC v. Apple Inc.*, Case No. 2:24-cv-00331-RWS (E.D. Tex.) (filed May 6, 2024). Defendants also gained knowledge of the Patents-in-Suit through various industry publications. *See, e.g.,* https://www.bizjournals.com/kansascity/news/2024/04/05/garmin-smartwatches-patent-infringement-slyde.html; https://news.bloomberglaw.com/ip-law/samsung-denied-review-of-smartwatch-patent-after-director-order; https://ipwatchdog.com/2024/04/18/patent-filings-roundup-slow-week-ptab-district-court-ideahub-subsidiary-challenges-instituted-patent-armory-continues-offensive/. This Court has previously held that corporations likely monitor the legal affairs of their competitors, which is sufficient to establish pre-suit knowledge of patents. *See NorthStar Sys. LLC v. Volkswagen AG*, Case No. 2:22-cv-00486-JRG, Dkt. No. 71, 7 (E.D. Tex. Aug. 5, 2023) ("The Court finds that it is plausible that BMW had knowledge of the Patents-in-Suit via industry publication. It is highly likely that a large corporation, like BMW, would keep abreast of its competitor's legal affairs, including whether or not they were sued for patent infringement.").

publications.[15] For example, the User Manual for the Xiaomi Smart Band 8 instructs user on how to use the power saving feature based on a gesture in an infringing manner. On information and belief, the Defendants' User Manuals and other instructional materials are prepared by or under the direction of Defendants to instruct customers and end-users on how to use the Accused Products in an infringing manner. On information and belief, these instructional materials are prepared by Defendants.

46.     Slyde has suffered damages as a result of Defendants' direct and indirect infringement of the '678 Patent in an amount to be proven at trial.

47.     Slyde has suffered, and will continue to suffer, irreparable harm as a result of Defendants' infringement of the '678 Patent, for which there is no adequate remedy at law, unless Defendants' infringement is enjoined by this Court.

**<u>COUNT II</u>**
**(Infringement of the '085 Patent)**

48.     Paragraphs 1 through 31 are incorporated by reference as if fully set forth herein.

49.     Slyde has not licensed or otherwise authorized Defendants to make, use, offer for sale, sell, or import any products that embody the inventions of the '085 Patent.

50.     Defendants have and continue to directly infringe the '085 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '085 Patent. Such products include smartwatches which detect orientation and switch power modes including, but not limited to, the Redmi Watch 5 Active, among other products.

---

[15] *See, e.g.,* https://www.mi.com/global/product-list/watches/watch/; https://www.mi.com/global/support/user-guide/

51.     For example, Defendants have and continue to directly infringe at least Claim 1 of the '085 Patent by making, using, offering to sell, selling, and/or importing into the United States products that include smartwatches which detect orientation and switch power modes, such as the Redmi Watch 5 Active, among other products. The Redmi Watch 5 Active is exemplary of how the Accused Products infringe the '085 Patent.

52.     The Redmi Watch 5 Active performs a method for switching a wristwatch from a first power mode to a second power mode. For example, the Redmi Watch 5 Active is a wristwatch. By way of further example, the Redmi Watch 5 Active is a wristwatch that switches from a first power mode (e.g., screen off) to a second power mode (e.g., screen on) when the user raises the wrist from a first position to a second position on which the Redmi Watch 5 Active is worn.[16]

53.     The Redmi Watch 5 Active performs a step of using an accelerometer for detecting a wristturn. For example, the Redmi Watch 5 includes an accelerometer, which is used to detect changes in the watch's orientation, including a wristturn.[17]

54.     The Redmi Watch 5 performs a step of switching said wristwatch from said first power mode to said second power mode when a wristturn has been detected. For example, the Redmi Watch 5's default wake-up setting is gesture based, requiring you to perform a wristturn to switch the watch from a first power mode (e.g., screen off) to a second power mode (e.g., screen on).[18]

55.     The Redmi Watch 5 performs a step of switching said wristwatch from said first

---

[16] *See* https://www.mi.com/global/support/faq/details/KA-483511/;
https://www.youtube.com/watch?v=nZQ4RwG3TX4 at 0:44

[17] *See* https://www.mi.com/global/product/redmi-watch-5-active/specs;
https://versus.com/en/xiaomi-redmi-watch-5-active/accelerometer

[18] *See* https://versus.com/en/xiaomi-redmi-watch-5-active/accelerometer;
https://www.youtube.com/watch?v=nZQ4RwG3TX4 at 0:42 to 0:44;
https://www.mi.com/global/support/faq/details/KA-483511/

power mode to said second power mode when a wristturn has been detected, wherein said step of detecting a wristturn comprises: detecting that an orientation of the wristwatch is in a starting position, wherein said step of detecting that the orientation is in the starting position comprises detecting that the orientation of the wristwatch is held within a first range for a defined time. For example, the Redmi Watch 5 comprises an accelerometer. The accelerometer is used to detect changes in the watch's orientation. By way of further example, the watch starts in a first power mode when it is in a certain orientation, such as when the wearer has their arm down at their side. When the wearer performs a wristturn by raising and rotating their wrist to view the watch's face, the accelerometer detects that change in orientation and turns the display on. By way of further example, the change in orientation is maintained for a defined period of time before the watch will change from a first power mode to a second power mode.[19]

56.     The Redmi Watch 5 performs a step of switching said wristwatch from said first power mode to said second power mode when a wristturn has been detected, wherein said step of detecting a wristturn comprises: detecting that an orientation of the wristwatch is then in a final position, wherein said step of detecting that the orientation is in the final position comprises detecting that the orientation is in a second range different from said first range. For example, the Redmi Watch 5 accelerometer[20] detects a change in orientation from a first position to a final position. By way of further example, the watch's accelerometer detects a change in orientation from the first range to a second range.[21]

---

[19] *See* https://versus.com/en/xiaomi-redmi-watch-5-active/accelerometer;
https://www.youtube.com/watch?v=nZQ4RwG3TX4 at 0:42 to 0:44;
https://www.mi.com/global/support/faq/details/KA-483511/
[20] *See* https://www.mi.com/global/product/redmi-watch-5-active/specs
[21] *See* https://versus.com/en/xiaomi-redmi-watch-5-active/accelerometer;
https://www.youtube.com/watch?v=nZQ4RwG3TX4 at 0:42 to 0:44;
https://www.mi.com/global/support/faq/details/KA-483511/

57.     The Redmi Watch 5 performs a step of switching said wristwatch from said first power mode to said second power mode when a wristturn has been detected, wherein said step of detecting a wristturn comprises: in response to a detection that the orientation of the wristwatch is in the second range, detecting that the wristwatch remains substantially immobile during a predetermined duration and that a duration between the starting position and the final position is in a predefined range. For example, when the Redmi Watch 5 detects a change in orientation such that the watch is in a second range, the Redmi Watch 5 also detects that it is substantially immobile in the second range. By way of further example, the Redmi Watch 5 detects that the watch changed from a starting position to a final position, and that the change in orientation lasted for a pre-determined amount of time, and that the final position is within a certain, predetermined range.[22]

58.     On information and belief, Defendants have directly infringed and continue to directly infringe at least the method claims of the '085 Patent by, among other things, their use, testing, and demonstration of the Accused Products in the United States, such as, for example, demonstrating the Accused Products at trade shows, such as CES 2025 in Las Vegas, Nevada, where the Defendants' direct employees use the Accused Products.[23]

59.     Defendants have and continue to indirectly infringe one or more claims of the '085 Patent by knowingly and intentionally inducing others, including Xiaomi's customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States products that include infringing

---

[22] https://versus.com/en/xiaomi-redmi-watch-5-active/accelerometer;
https://www.youtube.com/watch?v=nZQ4RwG3TX4 at 0:42 to 0:44;
https://www.mi.com/global/support/faq/details/KA-483511/
[23] *See* https://gadgetsandwearables.com/2025/01/10/ces-2025-redmi/ ("Xiaomi has kicked off 2025 in style with its CES debut of its latest timepiece – the Redmi Watch 5, along with the Buds 6 series.").

technology, such as smartwatches with gesture detection for switching power modes.

60.    Defendants, with knowledge that these products, or the use thereof, infringe the '085 Patent at least as of the date of this Complaint,[24] knowingly and intentionally induced, and continue to knowingly and intentionally induce, direct infringement of the '085 Patent by providing these products to end-users for use in an infringing manner. Alternatively, on information and belief, Defendants have adopted a policy of not reviewing the patents of others, and instructing their officers, agents, and employees to not review the patents of others, including specifically those related to Defendants' specific industry, thereby remaining willfully blind to the '085 Patent at least as early as the issuance of the '085 Patent.

61.    Defendants have induced infringement by others, including end-users, with the specific intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end-users, infringe the '085 Patent, but while remaining willfully blind to the infringement. Defendants have and continue to induce infringement by their

---

[24] On information and belief, Defendants gained knowledge of the Patents-in-Suit upon the filing of complaints asserting infringement of the Patents-in-Suit against their largest competitors in the United States and Global markets, including in *Slyde Analytics LLC v. Samsung Elecs. Co.*, Case No. 2:23-cv-00083-RWS (E.D. Tex.) (filed on Feb 28, 2023); *Slyde Analytics LLC v. Zepp Health Corp.*, Case No. 2:23-cv-00172-RWS (E.D. Tex) (filed April 14, 2023); *Slyde Analytics LLC v. Garmin Ltd.*, Case No. 2:23-cv-00215-RWS (E.D. Tex.) (filed March 27, 2024); *Slyde Analytics LLC v. Apple Inc.*, Case No. 2:24-cv-00331-RWS (E.D. Tex.) (filed May 6, 2024). Defendants also gained knowledge of the Patents-in-Suit through various industry publications. *See, e.g.,* https://www.bizjournals.com/kansascity/news/2024/04/05/garmin-smartwatches-patent-infringement-slyde.html;      https://news.bloomberglaw.com/ip-law/samsung-denied-review-of-smartwatch-patent-after-director-order;      https://ipwatchdog.com/2024/04/18/patent-filings-roundup-slow-week-ptab-district-court-ideahub-subsidiary-challenges-instituted-patent-armory-continues-offensive/. This Court has previously held that corporations likely monitor the legal affairs of their competitors, which is sufficient to establish pre-suit knowledge of patents. *See NorthStar Sys. LLC v. Volkswagen AG*, Case No. 2:22-cv-00486-JRG, Dkt. No. 71, 7 (E.D. Tex. Aug. 5, 2023) ("The Court finds that it is plausible that BMW had knowledge of the Patents-in-Suit via industry publication. It is highly likely that a large corporation, like BMW, would keep abreast of its competitor's legal affairs, including whether or not they were sued for patent infringement.").

customers and end-users by supplying them with instructions on how to operate the infringing technology in an infringing manner, while also making publicly available information on the infringing technology via Defendants' website, product literature and packaging, and other publications.[25] For example, the User Manual for the Redmi Watch 5 instructs user on the power saving feature based on a gesture in an infringing manner. On information and belief, the Defendants' User Manuals and other instructional materials are prepared by or under the direction of Defendants to instruct customers and end-users on how to use the Accused Products in an infringing manner. On information and belief, these instructional materials are prepared by Defendants.

62.     Slyde has suffered damages as a result of Defendants' direct and indirect infringement of the '085 Patent in an amount to be proven at trial.

63.     Slyde has suffered, and will continue to suffer, irreparable harm as a result of Defendants' infringement of the '085 Patent, for which there is no adequate remedy at law, unless Defendants' infringement is enjoined by this Court.

### COUNT III
**(Infringement of the '922 Patent)**

64.     Paragraphs 1 through 31 are incorporated by reference as if fully set forth herein.

65.     Slyde has not licensed or otherwise authorized Defendants to make, use, offer for sale, sell, or import any products that embody the inventions of the '922 Patent.

66.     Defendants have and continue to directly infringe the '922 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each

---

[25] *See, e.g.,* https://www.mi.com/global/product-list/watches/watch/;
https://www.mi.com/global/support/user-guide/

and every limitation of one or more claims of the '922 Patent. Such products include smartwatches with a digital display and touch-sensitive glass which allows for the selection of cards including, but not limited to, the Xiaomi Watch S4, among other products.

67.    For example, Defendants have and continue to directly infringe at least Claim 9 of the '922 Patent by making, using, offering to sell, selling, and/or importing into the United States products that include smartwatches with a digital display and touch-sensitive glass which allows for the selection of cards including, but not limited to, the Xiaomi Watch S4, among other products. The Xiaomi Watch S4 is exemplary of how the Accused Products infringe the '922 Patent.

68.    The Xiaomi Watch S4 performs a method for replacing an initially displayed card displayed by a wristwatch by a replacement card. For example, the Xiaomi Watch S4 is a wristwatch. By way of further example, the Xiaomi Watch S4 is a wristwatch that replaces the initially displayed card (e.g., the current watch face) with a replacement card (e.g., a different or new watch face including widgets, etc.).[26]

69.    The Xiaomi Watch S4 performs a step of detecting a direction of a movement of at least one finger at any place and along at least two different directions on a two-dimensional touch-sensitive glass. For example, the Xiaomi Watch S4 detects finger movements in the up-down and/or left-right direction on the touch-sensitive smartwatch display to change watch faces.[27]

70.    The Xiaomi Watch S4 performs a step of scrolling on a digital matrix display of several available cards so as for said scrolling to stop of itself so as to align an edge of the replacement card with an edge of the matrix display, wherein one card of said several available cards and occupying the entire digital matrix display is replaced after the scrolling, immediately

---

[26] *See* https://www.mi.com/global/support/faq/details/KA-517264/
[27] *See* https://manuals.plus/asin/B0DSJMB91W;
https://www.youtube.com/watch?v=3nZ7HF1JbPM at 0:22 and 0:24

and without further user intervention, by a different card selected between said several available cards and occupying the entire digital matrix display; and wherein the scrolling direction depends only on the direction of said movement so that said replacement card is dependent from the initially displayed card and from the direction of said movement and is independent from the starting point and end point of said movement on said digital matrix display. For example, the Xiaomi Watch S4 includes a 1.32-inch AMOLED display, which is a touchscreen.[28] When the user scrolls left or right on the display to change the watch face (e.g., a control, or widget, displayed on the watch's graphical interface to represent on the entire screen a unit such as the current time, a phase of the moon, a chronograph display etc.), the scrolling continues briefly even after the finger is lifted, and then automatically stops to align the edge of the new face with the edge of the display matrix. The direction of the continued scrolling depends on the direction of the scroll by the user and is continued in that direction without user intervention. This ensures that the replacement face fits perfectly on the display without requiring further user interaction.[29]

71.    The Xiaomi Watch S4 performs a step of lastingly displaying the replacement card on the whole of said digital matrix display, wherein each card of said several available cards has a distinct fixed or periodically refreshed image, the size of the images corresponding to the size of said digital matrix display. For example, the Xiaomi Watch S4 display shows the replacement watch face selected by the user on the entire watch display. This face is fixed and distinct, and the display automatically refreshes when there are any updates such as step count, time, battery life, weather, etc.[30]

---

[28] *See* https://www.mi.com/global/product/xiaomi-watch-s4-41mm/specs
[29] *See* https://manuals.plus/asin/B0DSJMB91W;
https://www.mi.com/global/support/faq/details/KA-517264/
[30] *See* https://www.youtube.com/watch?v=3nZ7HF1JbPM at 0:30;
https://www.mi.com/global/support/faq/details/KA-550383/

72.    On information and belief, Defendants have directly infringed and continue to directly infringe at least the method claims of the '922 Patent by, among other things, their use, testing, and demonstration of the Accused Products in the United States, such as, for example, demonstrating the Accused Products at trade shows, such as CES 2025 in Las Vegas, Nevada, where the Defendants' direct employees use the Accused Products.[31]

73.    Defendants have and continue to indirectly infringe one or more claims of the '922 Patent by knowingly and intentionally inducing others, including Xiaomi's customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States products that include infringing technology, such as smartwatches with touch displays.

74.    Defendants, with knowledge that these products, or the use thereof, infringe the '922 Patent at least as of the date of this Complaint,[32] knowingly and intentionally induced, and

---

[31] *See* https://gadgetsandwearables.com/2025/01/10/ces-2025-redmi/ ("Xiaomi has kicked off 2025 in style with its CES debut of its latest timepiece – the Redmi Watch 5, along with the Buds 6 series.").

[32] On information and belief, Defendants gained knowledge of the Patents-in-Suit upon the filing of complaints asserting infringement of the Patents-in-Suit against their largest competitors in the United States and Global markets, including in *Slyde Analytics LLC v. Samsung Elecs. Co.*, Case No. 2:23-cv-00083-RWS (E.D. Tex.) (filed on Feb 28, 2023); *Slyde Analytics LLC v. Zepp Health Corp.*, Case No. 2:23-cv-00172-RWS (E.D. Tex) (filed April 14, 2023); *Slyde Analytics LLC v. Garmin Ltd.*, Case No. 2:23-cv-00215-RWS (E.D. Tex.) (filed March 27, 2024); *Slyde Analytics LLC v. Apple Inc.*, Case No. 2:24-cv-00331-RWS (E.D. Tex.) (filed May 6, 2024). Defendants also gained knowledge the Patents-in-Suit through various industry publications. *See, e.g.,* https://www.bizjournals.com/kansascity/news/2024/04/05/garmin-smartwatches-patent-infringement-slyde.html; https://news.bloomberglaw.com/ip-law/samsung-denied-review-of-smartwatch-patent-after-director-order; https://ipwatchdog.com/2024/04/18/patent-filings-roundup-slow-week-ptab-district-court-ideahub-subsidiary-challenges-instituted-patent-armory-continues-offensive/. This Court has previously held that corporations likely monitor the legal affairs of their competitors, which is sufficient to establish pre-suit knowledge of patents. *See NorthStar Sys. LLC v. Volkswagen AG*, Case No. 2:22-cv-00486-JRG, Dkt. No. 71, 7 (E.D. Tex. Aug. 5, 2023) ("The Court finds that it is plausible that BMW had knowledge of the Patents-in-Suit via industry publication. It is highly likely that a large corporation, like BMW, would keep

continue to knowingly and intentionally induce, direct infringement of the '922 Patent by providing these products to end-users for use in an infringing manner. Alternatively, on information and belief, Defendants have adopted a policy of not reviewing the patents of others, and instructing their officers, agents, and employees to not review the patents of others, including specifically those related to Defendants' specific industry, thereby remaining willfully blind to the '922 Patent at least as early as the issuance of the '922 Patent.

75.   Defendants have induced infringement by others, including end-users, with the specific intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end-users, infringe the '922 Patent, but while remaining willfully blind to the infringement. Defendants have and continue to induce infringement by their customers and end-users by supplying them with instructions on how to operate the infringing technology in an infringing manner, while also making publicly available information on the infringing technology via Defendants' website, product literature and packaging, and other publications.[33] For example, the User Manual for the Xiaomi Watch S4 instructs users to use the display screen in an infringing manner. On information and belief, the Defendants' User Manuals and other instructional materials are prepared by or under the direction of Defendants to instruct customers and end-users on how to use the Accused Products in an infringing manner. On information and belief, these instructional materials are prepared by Defendants.

76.   Slyde has suffered damages as a result of Defendants' direct and indirect infringement of the '922 Patent in an amount to be proven at trial.

---

abreast of its competitor's legal affairs, including whether or not they were sued for patent infringement.").

[33] *See, e.g.,* https://www.mi.com/global/product-list/watches/watch/; https://www.mi.com/global/support/user-guide/

77.     Slyde has suffered, and will continue to suffer, irreparable harm as a result of Defendants' infringement of the '922 Patent, for which there is no adequate remedy at law, unless Defendants' infringement is enjoined by this Court.

## COUNT IV
### (Infringement of the '018 Patent)

78.     Paragraphs 1 through 31 are incorporated by reference as if fully set forth herein.

79.     Slyde has not licensed or otherwise authorized Defendants to make, use, offer for sale, sell, or import any products that embody the inventions of the '018 Patent.

80.     Defendants have and continue to directly infringe the '018 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '018 Patent. Such products include devices for analyzing the biomechanical parameters of a stride of a runner, such the Xiaomi Smart Band 7 Pro, among other products.

81.     For example, Defendants have and continue to directly infringe at least Claim 1 of the '018 Patent by making, using, offering to sell, selling, and/or importing into the United States products that include devices and associated software for analyzing the biomechanical parameters of a stride of a runner, such the Xiaomi Smart Band 7 Pro, among other products. The Xiaomi Smart Band 7 Pro is exemplary of how the Accused Products infringe the '018 Patent.

82.     The Xiaomi Smart Band 7 Pro comprises a device designed for analyzing biomechanical parameters of a stride of a runner, comprising: a self-sufficient electric power source. For example, the Xiaomi Smart Band 7 Pro is a wristwatch. The Xiaomi Smart Band 7 Pro is a wristwatch that measures the biomechanical parameters used to describe running cadence which is measured with a built-in accelerometer. By way of further example, the Xiaomi Smart

26

Band 7 Pro watch includes an electric power source (e.g., a battery).[34]

83.     The Xiaomi Smart Band 7 Pro comprises a tri-axial accelerometer capable of supplying at least one sequence of acceleration data in at least a vertical direction whilst the runner travels a distance on a running course a GPS receiver; a chronograph. For example, the Xiaomi Smart Band 7 Pro includes a tri-axial accelerometer (e.g., an internal 3D accelerometer sensor)[35] to calculate runner data, a GPS receiver (e.g., GPS for geolocation)[36], and a chronograph (e.g., a Stopwatch/Timer).[37]

84.     The Xiaomi Smart Band 7 Pro comprises a digital processor programmed for calculating, during or at the end of the run, biomechanical parameters of the stride of said runner, on the basis of said acceleration data, of a distance measured by said GPS receiver and/or by said accelerometer, and of a duration counted by said chronograph. For example, the Xiaomi Smart Band 7 Pro watch includes a CPU (e.g., the Dialog SmartBond DA14706 SoC)[38] to process data received from the accelerometer, GPS, and timer as biomechanical parameters of the stride during running or walking.[39]

85.     The Xiaomi Smart Band 7 Pro comprises a digital processor programmed for calculating, during or at the end of the run, biomechanical parameters of the stride of said runner,

---

[34] *See* https://www.mi.com/global/product/xiaomi-smart-band-7-pro/;
https://www.mi.com/global/support/article/KA-109187/;
https://www.mi.com/global/product/xiaomi-smart-band-7-pro/specs
[35] *See* https://www.mi.com/global/product/xiaomi-smart-band-7-pro/specs;
https://www.gsmarena.com/xiaomi_smart_band_7_pro_review-news-56155.php;
https://www.mi.com/global/support/article/KA-109692/
[36] *See* https://www.mi.com/global/product/xiaomi-smart-band-7-pro/
[37] *See* https://www.mi.com/global/support/faq/details/KA-11679/
[38] *See* https://en.namu.wiki/w/Xiaomi%20Smart%20Band%207%20Pro
[39] *See* https://www.mi.com/global/product/xiaomi-smart-band-7-pro/specs;
https://www.gsmarena.com/xiaomi_smart_band_7_pro_review-news-56155.php;
https://www.mi.com/global/support/article/KA-109692/;
https://www.youtube.com/watch?v=NzSEOJuVWBA at 1:27, 1:31, 1:42, 1:46, and 2:16.

on the basis of said acceleration data, of a distance measured by said GPS receiver and/or by said accelerometer, and of a duration counted by said chronograph, wherein the biomechanical parameters of the stride comprises a vertical oscillation of a center of gravity of said runner, and include a distance the center of gravity lowers and a distance the center of gravity elevates in a stride, and a sum of the lowering and of the elevation of the center of gravity, and wherein the biomechanical parameters are calculated at each stride. For example, the Xiaomi Smart Band 7 Pro watch measures the cadence of the user during the training session. Cadence can be defined as the total number of steps the user takes per minute. One easy way to measure your cadence for running is to count the times the user's feet hit the ground in 60 seconds.[40]

86.    The Xiaomi Smart Band 7 Pro comprises a digital processor programmed for calculating, during or at the end of the run, biomechanical parameters of the stride of said runner, on the basis of said acceleration data, of a distance measured by said GPS receiver and/or by said accelerometer, and of a duration counted by said chronograph, wherein said digital processor is programmed for determining an anteroposterior direction during the run of the runner. For example, the Xiaomi Smart Band 7 Pro watch includes a CPU (e.g., Dialog SmartBond DA14706 SoC)[41] to determine anteroposterior direction (e.g., forward and backward), using a 3D accelerometer, as three-axis accelerometers measure acceleration along the x-, y-, and z-axes.[42]

87.    The Xiaomi Smart Band 7 Pro comprises a digital processor programmed for

---

[40] *See* https://www.gsmarena.com/xiaomi_smart_band_7_pro_review-news-56155.php;
https://www.mi.com/global/product/xiaomi-smart-band-7/specs/;
https://www.mi.com/my/support/faq/details/KA-491579/;
https://www.mi.com/global/support/faq/details/KA-579104/;
https://www.mi.com/global/support/article/KA-109692/
[41] *See* https://en.namu.wiki/w/Xiaomi%20Smart%20Band%207%20Pro
[42] *See* https://www.mi.com/global/product/xiaomi-smart-band-7-pro/specs;
https://www.mi.com/global/support/article/KA-109692/

calculating, during or at the end of the run, biomechanical parameters of the stride of said runner, on the basis of said acceleration data, of a distance measured by said GPS receiver and/or by said accelerometer, and of a duration counted by said chronograph, wherein a sequence of acceleration data in said anteroposterior direction is measured by said accelerometer during the run and processed separately from said sequence of acceleration data in the vertical direction. For example, the Xiaomi Smart Band 7 Pro watch includes an inbuilt 3D accelerometer. It has three sensing structures arranged perpendicular to each other, allowing it to measure movement separately along the X, Y, and Z directions.[43]

88. The Xiaomi Smart Band 7 Pro comprises a digital processor programmed for calculating, during or at the end of the run, biomechanical parameters of the stride of said runner, on the basis of said acceleration data, of a distance measured by said GPS receiver and/or by said accelerometer, and of a duration counted by said chronograph, wherein said digital processor is further programmed for calculating, during or at the end of the run, at least some of the biomechanical parameters of the stride of said runner, also on the basis of said acceleration data in said anteroposterior direction. For example, the Xiaomi Smart Band 7 Pro watch includes a CPU (e.g., Dialog SmartBond DA14706)[44] to process information received during or after a training session such as running using accelerometer data.[45]

89. The Xiaomi Smart Band 7 Pro comprises a wireless interface for exchange of data with another data processing device. For example, the Xiaomi Smart Band 7 Pro watch can be

---

[43] *See* https://www.mi.com/global/product/xiaomi-smart-band-7-pro/specs;
https://www.mi.com/global/support/article/KA-109692/
[44] *See* https://en.namu.wiki/w/Xiaomi%20Smart%20Band%207%20Pro
[45] *See* https://www.mi.com/global/product/xiaomi-smart-band-7-pro/specs;
https://www.mi.com/global/support/article/KA-109692/;
https://www.youtube.com/watch?v=NzSEOJuVWBA at 1:32 and 2:14.

paired with the MI Fitness app to view analyzed data from your training sessions wirelessly from the smartwatch to the smartphone.[46]

90.    On information and belief, Defendants have directly infringed and continue to directly infringe at least the method claims of the '018 Patent by, among other things, their use, testing, and demonstration of the Accused Products in the United States, such as, for example, demonstrating the Accused Products at trade shows, such as CES 2025 in Las Vegas, Nevada, where the Defendants' direct employees use the Accused Products.[47]

91.    Defendants have and continue to indirectly infringe one or more claims of the '018 Patent by knowingly and intentionally inducing others, including Xiaomi's customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States products that include infringing technology, such devices for analyzing the biomechanical parameters of a stride of a runner, which include a power source, accelerometer, GPS receiver, chronograph, and digital processor programmed to measure parameters associated with a runner's stride.

92.    Defendants, with knowledge that these products, or the use thereof, infringe the '018 Patent at least as of the date of this Complaint,[48] knowingly and intentionally induced, and

---

[46] *See* https://www.mi.com/global/product/xiaomi-smart-band-7-pro/

[47] *See* https://gadgetsandwearables.com/2025/01/10/ces-2025-redmi/ ("Xiaomi has kicked off 2025 in style with its CES debut of its latest timepiece – the Redmi Watch 5, along with the Buds 6 series.").

[48] On information and belief, Defendants gained knowledge of the Patents-in-Suit upon the filing of complaints asserting infringement of the Patents-in-Suit against their largest competitors in the United States and Global markets, including in *Slyde Analytics LLC v. Samsung Elecs. Co.*, Case No. 2:23-cv-00083-RWS (E.D. Tex.) (filed on Feb 28, 2023); *Slyde Analytics LLC v. Zepp Health Corp.*, Case No. 2:23-cv-00172-RWS (E.D. Tex) (filed April 14, 2023); *Slyde Analytics LLC v. Garmin Ltd.*, Case No. 2:23-cv-00215-RWS (E.D. Tex.) (filed March 27, 2024); *Slyde Analytics LLC v. Apple Inc.*, Case No. 2:24-cv-00331-RWS (E.D. Tex.) (filed May 6, 2024). Defendants also gained knowledge of the Patents-in-Suit through various industry publications. *See, e.g.,* https://www.bizjournals.com/kansascity/news/2024/04/05/garmin-smartwatches-patent-

continue to knowingly and intentionally induce, direct infringement of the '018 Patent by providing these products to end-users for use in an infringing manner. Alternatively, on information and belief, Defendants have adopted a policy of not reviewing the patents of others, and instructing their officers, agents, and employees to not review the patents of others, including specifically those related to Defendants' specific industry, thereby remaining willfully blind to the '018 Patent at least as early as the issuance of the '018 Patent.

93.     Defendants have induced infringement by others, including end-users, with the specific intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end-users, infringe the '018 Patent, but while remaining willfully blind to the infringement. Defendants have and continue to induce infringement by their customers and end-users by supplying them with instructions on how to operate the infringing technology in an infringing manner, while also making publicly available information on the infringing technology via Defendants' website, product literature and packaging, and other publications.[49] For example, the User Manual for the Xiaomi Smart Band 7 Pro instructs users to use the fitness tracking capabilities in an infringing manner. On information and belief, the Defendants' User Manuals and other instructional materials are prepared by or under the direction

---

infringement-slyde.html;        https://news.bloomberglaw.com/ip-law/samsung-denied-review-of-smartwatch-patent-after-director-order;        https://ipwatchdog.com/2024/04/18/patent-filings-roundup-slow-week-ptab-district-court-ideahub-subsidiary-challenges-instituted-patent-armory-continues-offensive/. This Court has previously held that corporations likely monitor the legal affairs of their competitors, which is sufficient to establish pre-suit knowledge of patents. *See NorthStar Sys. LLC v. Volkswagen AG*, Case No. 2:22-cv-00486-JRG, Dkt. No. 71, 7 (E.D. Tex. Aug. 5, 2023) ("The Court finds that it is plausible that BMW had knowledge of the Patents-in-Suit via industry publication. It is highly likely that a large corporation, like BMW, would keep abreast of its competitor's legal affairs, including whether or not they were sued for patent infringement.").

[49] *See, e.g.,* https://www.mi.com/global/product-list/watches/watch/; https://www.mi.com/global/support/user-guide/

of Defendants to instruct customers and end-users on how to use the Accused Products in an infringing manner. On information and belief, these instructional materials are prepared by Defendants.

94. Slyde has suffered damages as a result of Defendants' direct and indirect infringement of the '018 Patent in an amount to be proven at trial.

95. Slyde has suffered, and will continue to suffer, irreparable harm as a result of Defendants' infringement of the '018 Patent, for which there is no adequate remedy at law, unless Defendants' infringement is enjoined by this Court.

**COUNT V**
**(Infringement of the '134 Patent)**

96. Paragraphs 1 through 31 are incorporated by reference as if fully set forth herein.

97. Slyde has not licensed or otherwise authorized Defendants to make, use, offer for sale, sell, or import any products that embody the inventions of the '134 Patent.

98. Defendants have and continue to directly infringe the '134 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '134 Patent. Such products include athletic performance monitoring devices, such as the Xiaomi Smart Band 8, among other products.

99. For example, Defendants have and continue to directly infringe at least Claim 14 of the '134 Patent by making, using, offering to sell, selling, and/or importing into the United States products that include performance monitoring devices with an accelerometer wirelessly connected to a user-worn device with a processing system to provide athletic performance information including, but not limited to, the Xiaomi Smart Band 8, among other products. The Xiaomi Smart Band 8 is exemplary of the infringement of each of the Accused Products.

100.    The Xiaomi Smart Band 8 performs a method for providing athletic performance information. For example, the Xiaomi Smart Band 8 includes built-in activity tracking using an internal 3D accelerometer to track user activity and progress towards performance information (e.g., the daily activity goal is shown as a percentage and visualized with a circle that fills up as the user is active). The watch is synced with the MI Fitness app. The performance data is provided on the MI Fitness app.[50]

101.    The Xiaomi Smart Band 8 performs a step of measuring the acceleration of an athlete using an accelerometer adapted to be worn by the athlete close to the center of gravity of the athlete, to provide acceleration data. For example, the Xiaomi Smart Band 8 watch includes an internal 3D accelerometer that records movements to analyze acceleration data (e.g., the frequency, intensity, and regularity of user's hand movements in relation to the body's center of gravity, together with their physical information).[51]

102.    The Xiaomi Smart Band 8 performs a step of wirelessly communicating by the accelerometer the acceleration data, relating to the acceleration of the athlete, to a processing system integral in an athlete-worn device being worn by the athlete, wherein the processing system is configured such that, during use, it requests acceleration data from the accelerometer only when a predefined event has occurred. For example, the Xiaomi Smart Band 8 wirelessly communicates

---

[50] *See* https://www.mi.com/global/product/xiaomi-smart-band-8/;
https://www.mi.com/uk/support/article/KA-42680/; https://www.mi.com/global/product/xiaomi-smart-band-8/; https://www.mi.com/global/support/article/KA-109136/;
https://www.mi.com/uk/support/faq/details/KA-170830/;
https://www.youtube.com/watch?v=tK_RFUBy06U
[51] *See* https://www.mi.com/global/product/xiaomi-smart-band-8/specs;
https://www.ebay.com/itm/296023294709; https://www.mi.com/global/support/article/KA-109692/; https://www.mi.com/my/support/faq/details/KA-491579/;
https://www.engineersgarage.com/fitness-tracker-sensors/;
https://www.youtube.com/watch?v=tK_RFUBy06U

the training data to the mobile phone with the MI Fitness app. The app requests the data from the watch after training.[52]

103.    The Xiaomi Smart Band 8 performs a step of processing by the processing system the acceleration data the processing system receives from the accelerometer, to provide athletic performance information. For example, the Xiaomi Smart Band 8 syncs the training data to the MI Fitness app automatically after the user's training session. The performance statistics can be seen on the MI Fitness app.[53]

104.    On information and belief, Defendants have directly infringed and continue to directly infringe at least the method claims of the '134 Patent by, among other things, their use, testing, and demonstration of the Accused Products in the United States, such as, for example, demonstrating the Accused Products at trade shows, such as CES 2025 in Las Vegas, Nevada, where the Defendants' direct employees use the Accused Products.[54]

105.    Defendants have and continue to indirectly infringe one or more claims of the '134 Patent by knowingly and intentionally inducing others, including Xiaomi's customers and end-

---

[52] *See* https://www.mi.com/global/support/article/KA-109136/;
https://www.mi.com/uk/support/faq/details/KA-170830/;
https://www.youtube.com/watch?v=tK_RFUBy06U;
https://www.mi.com/uk/support/faq/details/KA-231124/?srsltid=AfmBOoqR2SNnAXpNGnxpvDP_F7y1JEDK0awgCpX39Q_7k9ezcO-44sjk;
https://www.mi.com/global/product/xiaomi-smart-band-8/specs;
https://www.ebay.com/itm/296023294709; https://www.mi.com/global/support/article/KA-109692/
[53] *See* https://www.mi.com/global/support/article/KA-109136/;
https://www.mi.com/uk/support/faq/details/KA-170830/;
https://www.youtube.com/watch?v=tK_RFUBy06U;
https://www.mi.com/global/support/article/KA-109692/;
https://www.mi.com/uk/support/article/KA-42680/
[54] *See* https://gadgetsandwearables.com/2025/01/10/ces-2025-redmi/ ("Xiaomi has kicked off 2025 in style with its CES debut of its latest timepiece – the Redmi Watch 5, along with the Buds 6 series.").

34

users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States products that include infringing technology, such as such as performance monitoring devices with an accelerometer wirelessly connected to a user-worn device with a processing system to provide athletic performance information.

106.    Defendants, with knowledge that these products, or the use thereof, infringe the '134 Patent at least as of the date of this Complaint,[55] knowingly and intentionally induced, and continues to knowingly and intentionally induce, direct infringement of the '134 Patent by providing these products to end-users for use in an infringing manner. Alternatively, on information and belief, Defendants have adopted a policy of not reviewing the patents of others, and instructing their officers, agents, and employees to not review the patents of others, including specifically those related to Defendants' specific industry, thereby remaining willfully blind to the '134 Patent at least as early as the issuance of the '134 Patent.

---

[55] On information and belief, Defendants gained knowledge of the Patents-in-Suit upon the filing of complaints asserting infringement of the Patents-in-Suit against their largest competitors in the United States and Global markets, including in *Slyde Analytics LLC v. Samsung Elecs. Co.*, Case No. 2:23-cv-00083-RWS (E.D. Tex.) (filed on Feb 28, 2023); *Slyde Analytics LLC v. Zepp Health Corp.*, Case No. 2:23-cv-00172-RWS (E.D. Tex) (filed April 14, 2023); *Slyde Analytics LLC v. Garmin Ltd.*, Case No. 2:23-cv-00215-RWS (E.D. Tex.) (filed March 27, 2024); *Slyde Analytics LLC v. Apple Inc.*, Case No. 2:24-cv-00331-RWS (E.D. Tex.) (filed May 6, 2024). Defendants also gained knowledge of the Patents-in-Suit through various industry publications. *See, e.g.,* https://www.bizjournals.com/kansascity/news/2024/04/05/garmin-smartwatches-patent-infringement-slyde.html; https://news.bloomberglaw.com/ip-law/samsung-denied-review-of-smartwatch-patent-after-director-order; https://ipwatchdog.com/2024/04/18/patent-filings-roundup-slow-week-ptab-district-court-ideahub-subsidiary-challenges-instituted-patent-armory-continues-offensive/. This Court has previously held that corporations likely monitor the legal affairs of their competitors, which is sufficient to establish pre-suit knowledge of patents. *See NorthStar Sys. LLC v. Volkswagen AG*, Case No. 2:22-cv-00486-JRG, Dkt. No. 71, 7 (E.D. Tex. Aug. 5, 2023) ("The Court finds that it is plausible that BMW had knowledge of the Patents-in-Suit via industry publication. It is highly likely that a large corporation, like BMW, would keep abreast of its competitor's legal affairs, including whether or not they were sued for patent infringement.").

107.    Defendants have induced infringement by others, including end-users, with the specific intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end-users, infringe the '134 Patent, but while remaining willfully blind to the infringement. Defendants have and continue to induce infringement by their customers and end-users by supplying them with instructions on how to operate the infringing technology in an infringing manner, while also making publicly available information on the infringing technology via Defendants' website, product literature and packaging, and other publications.[56] For example, the User Manual for the Xiaomi Smart Band 8 instructs users to use the fitness tracking capabilities in an infringing manner. On information and belief, the Defendants' User Manuals and other instructional materials are prepared by or under the direction of Defendants to instruct customers and end-users on how to use the Accused Products in an infringing manner. On information and belief, these instructional materials are prepared by Defendants.

108.    Slyde has suffered damages as a result of Defendants' direct and indirect infringement of the '134 Patent in an amount to be proven at trial.

109.    Slyde has suffered, and will continue to suffer, irreparable harm as a result of Defendants' infringement of the '134 Patent, for which there is no adequate remedy at law, unless Defendants' infringement is enjoined by this Court.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury for all issues so triable.

---

[56] *See, e.g.,* https://www.mi.com/global/product-list/watches/watch/; https://www.mi.com/global/support/user-guide/

## PRAYER FOR RELIEF

WHEREFORE, Slyde prays for relief against Defendants as follows:

a.       Entry of judgment declaring that Defendants have directly and/or indirectly infringed one or more claims of each of the Patents-in-Suit;

b.       An order pursuant to 35 U.S.C. § 283 permanently enjoining Defendants, their officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them, from further acts of infringement of one or more of the Patents-in-Suit;

c.       An order awarding damages sufficient to compensate Slyde for Defendants' infringement of the Patents-in-Suit, but in no event less than a reasonable royalty, together with interest and costs;

d.       Entry of judgment declaring that this case is exceptional and awarding Slyde its costs and reasonable attorney fees under 35 U.S.C. § 285; and

e.       Such other and further relief as the Court deems just and proper.

Dated: May 19, 2026                           Respectfully submitted,

_/s/ Vincent J. Rubino, III_
Alfred R. Fabricant
NY Bar No. 2219392
Email: ffabricant@frlip.com
Peter Lambrianakos
NY Bar No. 2894392
Email: plambrianakos@frlip.com
Vincent J. Rubino, III
NY Bar No. 4557435
Email: vrubino@frlip.com
**Fabricant, Rubino & Lambrianakos LLP**
411 Theodore Fremd Avenue
Suite 206 South
Rye, New York 10580
Telephone: (212) 257-5797
Facsimile: (212) 257-5796

John Andrew Rubino
NY Bar No. 5020797
Email: jarubino@rubinoip.com
Michael Mondelli III
NY Bar No. 5805114
Email: mmondelli@rubinoip.com
**RUBINO IP**
1200 Harbor Blvd., 10th Floor
Weehawken Township, NJ 07086
Telephone: (201) 341-9445
Facsimile: (973) 535-0921

***ATTORNEYS FOR PLAINTIFF,
SLYDE ANALYTICS LLC***